UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEE LUCAS (#338382)                                            CIVIL ACTION

VERSUS

BILLY CANNON, ET AL.                                           NO. 12-0229-SDD-RLB

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on July 26, 2013.

                                    RICHARD L. BOURGEOIS, JR.
                                    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEE LUCAS (#338382)                                                    CIVIL ACTION

VERSUS

BILLY CANNON, ET AL.                                                   NO. 12-0229-SDD-DLD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss, rec.doc.no. 19. This motion is opposed.[1]

The pro se plaintiff, an inmate previously confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Billy Cannon, D.D.S., and Warden Burl Cain, complaining that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs, specifically through a failure to allow the plaintiff to obtain appropriate dental treatment.

In his Complaint, the plaintiff alleges that in April, 2010, while confined at LSP, he was diagnosed with periodontal disease. Upon being advised by defendant Cannon, a dentist employed at LSP, of an LSP program which permitted inmates to retain the services of private dentists, the plaintiff contracted with a private dentist who came to LSP and performed a "full-mouth restoration". The plaintiff alleges that thereafter, in November, 2010, he cracked one of

---

[1] The sole basis for the plaintiff's objection to the defendants' Motion to Dismiss is his contention that the motion is untimely, having been filed after the filing of the defendants' Answer in this case. However, a district court is authorized to treat an untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings based upon a failure to state claim. See Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). Further, a Rule 12(c) motion is evaluated under the same standard as a motion to dismiss filed pursuant to Rule 12(b)(6). See Doe v. Myspace, Inc., 528 F.3d 413, 418 (5th Cir.), cert. denied, 555 U.S. 1031 (2008).

the dental crowns in his mouth while eating.  The plaintiff consulted with Dr. Cannon at that time and was informed by the defendant that the crown appeared to be "stable".  The plaintiff alleges that approximately a year later, however, in August, 2011, the referenced crown "fractured completely", causing the plaintiff pain.  The plaintiff again consulted with defendant Cannon who advised the plaintiff that the pain would subside.  However, according to the plaintiff, Dr. Cannon was under the mistaken impression that the "crown was fused to metal", whereas the crown was in fact fused "directly to plaintiff's tooth," and the plaintiff asserts that his condition did not improve.

Beginning in September, 2011, the plaintiff attempted to contract again with a private dentist to repair the damage to the referenced crown.  Although defendant Cannon recommended the services of a particular private dentist, the plaintiff decided to retain the services of another.  When the plaintiff attempted to do so, however, he alleges that he was called to the LSP dental clinic on September 9, 2011, and was informed by an angry Dr. Cannon that the program authorizing the retention of private dentists was suspended.  The plaintiff makes the assertion, however, that the program was selectively suspended only as to him and that Dr. Cannon took this action because of the plaintiff's decision to retain a dentist other than the one recommended by the defendant.  The plaintiff complains that, as a result, he thereafter continued to suffer pain because of an inability to obtain appropriate dental treatment.  He prays for monetary damages and injunctive relief compelling the defendants "to allow a private dentist of plaintiff's choice to come in and repair plaintiff's damaged mouth."

At some point in early 2012, prior to the filing of this lawsuit in April, 2012, the plaintiff was apparently transferred from LSP to David Wade Correctional Center ("DWCC") in Homer, Louisiana.

In response to the plaintiff's allegations, the defendants first seek dismissal, on jurisdictional grounds pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim asserted against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Specifically, in Hafer v. Melo, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Id. at 29.

In addition to the foregoing, the plaintiff's claim for prospective injunctive relief asserted against the defendants in their official capacities is not prohibited under the Eleventh Amendment because such a claim is also not treated as a claim against the state. Will v. Michigan Department of State Police, supra, at 71. See also 15 Am. Jur. 2d Civil Rights § 101. Notwithstanding, inasmuch as the plaintiff has since been transferred to another institution and is no longer subjected to the alleged wrongful conduct of the defendants, his claim for prospective injunctive relief has been rendered moot by such transfer and is no longer properly before the

Court.  See, e.g., Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot").  This aspect of the plaintiff's lawsuit, therefore, is subject to dismissal.

Turning to the plaintiff's claims which are not subject to dismissal on jurisdictional grounds, the defendants next assert that the plaintiff has failed to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level".  Bell Atlantic Corp. v. Twombly, supra, at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, supra, at 678, quoting Bell Atlantic Corp. v. Twombly, supra.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Further, "[a] document filed pro se is 'to be liberally construed' ... and 'a

pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." Ashcroft v. Iqbal, supra, at 678 (internal quotation marks omitted).

      Initially, with regard to the plaintiff's claims asserted against defendant Burl Cain, the Court finds that the plaintiff has failed to allege sufficient connexity between the actions of this defendant and the alleged constitutional violations of which he complains.  Pursuant to well-settled legal principles, in order for a supervisory official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that defendant Cain is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).  See also Bell v. Livingston, 356 Fed. Appx. 715 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.  Lozano v. Smith, supra, at 768.

In the instant case, the plaintiff has failed to allege that defendant Cain has had any personal or direct involvement in the provision of the plaintiff's medical care.  Instead, the principal basis for the plaintiff's claim relative to defendant Cain is that this defendant, as Warden at LSP, "is legally responsible for the operation of [the prison] and for the welfare of all the inmates of that prison."  It is clear that this allegation constitutes an assertion of mere supervisory authority on the part of the defendant Warden and that, in the absence of any suggestion that defendant Cain was involved in providing the plaintiff with medical or dental care, there is no basis for the imposition of liability against him.  In addition, the plaintiff makes an assertion that Warden Cain failed to act upon a letter addressed to the defendant from the plaintiff's criminal attorney on September 20, 2011, advising of the plaintiff's wish to be treated by an outside dentist.  This specific assertion is not sufficient to establish a likelihood of responsibility on the part of defendant Cain.  Specifically, there is no indication that defendant Cain saw or read the referenced correspondence addressed to his office, and even had he done so, an inmate plaintiff is not constitutionally entitled to an investigation into his personal or administrative complaints nor to a fair or favorable response thereto, and there is no procedural due process right inherent in such a claim. Cf., Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005) (finding that an inmate's claim regarding a failure to investigate or respond to an administrative grievance was "indisputably meritless").  This is particularly true where the addressee of the referenced correspondence, as warden of a facility holding thousands of inmates, is not trained as a health care provider and so is not qualified to evaluate the plaintiff's asserted need.  Accordingly, the plaintiff's claim regarding the alleged conduct of defendant Cain in this case is without legal foundation and should be dismissed.

Turning to the plaintiff's claim asserted against defendant Billy Cannon, the Court

concludes that this claim is subject to dismissal as well.  Specifically, the Court finds that the defendant is entitled to qualified immunity in connection with this claim.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  <u>Huff v. Crites</u>, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>.  <u>Id.</u> at 202.

Applying the foregoing standard, the Court finds that the plaintiff has failed to allege facts which overcome the defendant's assertion of qualified immunity.  In this regard, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Johnson v. Treen</u>, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue.  <u>Estelle v. Gamble</u>, <u>supra</u>.  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  <u>Varnado v. Lynaugh</u>, 920 F.2d 320 (5th Cir. 1991); <u>Johnson v. Treen</u>, <u>supra</u>.  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate

indifference" under the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 839-30 (1994). As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001), quoting Estelle v. Gamble, supra.  Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

   Applying the foregoing standard, the Court finds that the plaintiff has failed to adequately state a claim for relief as to defendant Cannon.  The plaintiff alleges that, in November, 2010, he suffered a crack to an enamel dental crown and was evaluated by defendant Cannon at that time, who advised the plaintiff's that the condition was stable.  Thereafter, in August, 2011, the plaintiff suffered a further fracture of the referenced crown and experienced pain.  According to the plaintiff, he was again evaluated by defendant Cannon, who was of the opinion that the crown was "fused to metal" and that the pain which the plaintiff was experiencing would subside.  The plaintiff disagreed with this determination and, in September, 2011, attempted to obtain treatment from a private dentist.  According to the plaintiff, the defendant initially recommended a dentist to the plaintiff, but when the plaintiff sought the assistance of another provider, the defendant allegedly became angry and refused permission to the plaintiff to obtain assistance from an outside provider.  As a result, the plaintiff alleges that he was denied the right

to obtain the needed treatment prior to his transfer to DWCC several months later.

An inmate's right of access to basic medical care includes the right to see a dentist when the conditions of his teeth or gums have a serious effect upon his health or well being. Williams v. Mason, 210 Fed. Appx. 389 (5th Cir. 2006), citing Farrow v. West, 320 F.3d 1235, 1239-41 (11th Cir. 2003), and Wynn v. Southward, 251 F.3d 588 (7th Cir. 2001).  In cases where the courts have found potential claims to be stated, however, the complaining inmates allegedly could not chew or eat adequately due to the extreme poor condition of their dental health, id., and often had few if any teeth left.  See, e.g., Farrow v. West, supra (two teeth remaining; dentures denied); Huffman v. Linthicum, 265 Fed. Appx. 162 (5th Cir. 2008) (all teeth removed; dentures denied); Wynn v. Southward, supra (prisoner allegedly unable to chew food without dentures which he had previously possessed).  In contrast, the plaintiff in the instant case has not alleged an inability to eat, nor has he complained of any weight loss or other complications as a result of the defendant's alleged misconduct.  Instead, the plaintiff alleges only that he suffers with a single cracked enamel crown in a back molar which he wishes to have repaired.  He acknowledges that he was seen by defendant Cannon both when the crown initially cracked in November, 2010, and also when it cracked further in August, 2011, and he concedes that it was Dr. Cannon's opinion that the condition was not serious.  In addition, an excerpt from the plaintiff's administrative proceedings, attached as an exhibit to the plaintiff's Complaint, reflects that he was seen again by defendant Cannon in October, 2011, in response to the plaintiff's administrative grievance, and reportedly was "not able to demonstrate any painful areas or one point of pain."[2]  These factors belie the plaintiff's claim that the defendant subjected him to

---

[2] In the context of a motion to dismiss, the Court may consider the Complaint, any attachments and/or any subsequent filings by a pro se plaintiff.  See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000); Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983);

deliberate medical indifference. In determining whether a denial of medical care amounts to deliberate indifference, the "essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). Moreover, pursuant to well-settled jurisprudence, the plaintiff was not entitled to the medical treatment of his choice, to the best treatment available, or to all treatment which may have been available to persons who were not incarcerated. See McQueen v. Karr, 54 Fed. Appx. 406 (5th Cir. 2002) (upholding a dismissal, as frivolous, of an inmate's claim regarding a failure to provide root canals instead of tooth extractions); Avila v. Landgrebe, 2013 WL 1336586 (S.D. Tex. March 29, 2013) (dismissing as frivolous an inmate's claim regarding a failure to provide crowns for his broken teeth). Finally, the relatively short period of approximately five or six months between the plaintiff's initial complaint in September, 2011, and his subsequent transfer to DWCC in early, 2012, fails to establish deliberate indifference in the absence of the plaintiff's allegation of resulting harm. See id. (finding no deliberate indifference in delay of six months in providing dental treatment). Accordingly, upon a finding by the Court that the plaintiff has failed to show either that his condition constituted a serious medical need or that defendant Cannon exhibited deliberate indifference thereto, and taking into account the relatively short period of time between the plaintiff's initial complaint and his transfer to another institution, the Court concludes that the plaintiff has failed to establish entitlement to relief in connection with his claim asserted against defendant Cannon, and the defendant is entitled to judgment as a matter of law.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court

---

McGruder v. Phelps, 608 F.2d 1023, 1025 (5th Cir. 1979).

may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motion to Dismiss, rec.doc.no. 19, be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, for failure to state a claim upon which relief may be granted.

Signed in Baton Rouge, Louisiana, on July 26, 2013.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**